406 P.2d 138

**Elton A. NELSON, Contractor, Plaintiff and Cross-Defendant, Respondent,**

v.

**John W. HAZEL, Jr., and Margaret E. Hazel, husband and wife, Defendants and Cross-Claimants, Appellants.**

**No. 9539.**

Supreme Court of Idaho.

Sept. 30, 1965.

William S. Hawkins and Paul D. Mc-
Cabe, Coeur d'Alene, for appellants.

**482**

Smith, Kimball & Reed, Coeur d'Alene, for respondent.

SMITH, Justice.

Respondent instituted this action to foreclose laborer's and materialman's lien on appellants' real property. In his complaint respondent alleges that he performed labor and furnished materials of the reasonable value of $5,090.86 in the remodeling, alteration and construction of appellants' dwelling house; that appellants paid $1,997.51 on the account, and refused to pay the balance of $3,093.35. Respondent also seeks attorneys' fees and costs, and foreclosure of the lien on, and sale of, the property.

Appellants in their answer admit that pursuant to an oral understanding respondent furnished some labor and materials used in and upon the dwelling, but allege that he failed to perform the work in good and workmanlike manner or to furnish proper materials. They admit having paid respondent $1,997.51, but allege that they owe him nothing more.

Appellants then cross-claimed for breach of the oral agreement, alleging that respondent was to perform the agreed work for a sum not to exceed $3500; that respondent performed certain work in a negligent and unworkmanlike manner, left the premises in an unfinished condition and breached his contract; that in numerous instances, specifically alleged, respondent performed the work in a negligent and unworkmanlike manner. Appellants pray for $5,000 general damages to their premises and for $2300 as

the reasonable cost of labor and material to tear out and repair respondent's improper and unworkmanlike work.

The trial court, sitting without a jury, after a trial had, found that appellants orally hired respondent to remodel appellants' dwelling on a time and material basis, although respondent submitted an estimate on the original work contemplated; that the contract implied that the work would be performed in good and workmanlike manner, which it was not, setting forth instances of defective construction; that although appellants claimed that respondent was deficient in placing a footing for a fireplace, to be constructed by a third party, appellants had not furnished to respondent any specifications for the footing; that appellants had not submitted adequate proof as to their alleged damage; that respondent had substantially performed the work contemplated by the oral agreement and was not entitled to the full amount of $3,093.35 alleged as owing on the account. The court then found that "due to the defects in the work performed * * * the plaintiff [respondent] is not entitled to an award of attorney's fees," also denied appellants any relief on their counterclaim. The court entered judgment accordingly in favor of respondent; also adjudged that the lien be foreclosed, and that the property be sold in satisfaction of the judgment. Appellants perfected an appeal from the judgment.

Appellants specified error of the trial court in finding:

That appellants hired respondent on a time and material basis rather than on a contract basis of $3500;

That respondent had substantially completed all the work contemplated by the original contract;

That appellants failed to sustain their burden of proof as to the cost of repair;

Also in granting respondent full recovery, and in failing to grant appellants damage on their counterclaim, while finding that respondent had breached the contract by failing to build the structure in good and workmanlike manner.

Respondent submitted bills for labor and materials amounting to $5,090.86 upon which appellants paid $1,997.51, leaving a balance of $3,093.35. Additionally, appellants paid direct to the subcontractors, for plumbing and electrical work, the sum of $1117.98.

The new addition to the rear of appellants' 2-story house was agreed to be an oblong 2-story, 9 feet by 32 feet structure, with a new slanting roof over the entire rear portion, and a connecting slanted roof added over the remaining portion to join the roof of the older portion of the dwelling. A fireplace was not to be con-

structed by respondent, but he did construct a "footing" for the fireplace and chimney.

The interior of the second story of the addition was not to be completed, nor was the "finishing" or any of the painting; the material from the older structure was to be used as much as possible so as to reduce the expense of remodeling. Respondent and various of his employees worked on the addition during July and August and part of September, 1961. After September 15, 1961, respondent had nothing further to do with the added structure, and in fact never returned to view it.

Appellants' specifications of error question the sufficiency of the evidence to support certain findings and the judgment of the trial court, thus necessitating a review of the evidence.

Respondent testified that under the oral contract he was to build the addition on the basis of cost plus 5%; that the parties placed no limit on the expense of the remodeling and that he attempted to keep the costs down. After the work had progressed to some extent he stated that he told appellants that the work would cost around $5,000.00 but that he did not at any time tell them that the work would not cost in excess of $3500.00.

He described the sagging condition of the floors in the older portion of the house, and the fact that the roof sagged some in the area where the new portion of the roof was joined to the old roof, but that the slight sag was not particularly noticeable; also that any unevenness in the floor could have been remedied by sanding operations.

He also stated that there were some changes from the original plan of remodeling, such as changing positions of windows, a doorway and a door; certain built-in cabinet work, and other minor details; also a footing for the fireplace was added.

He was specific in his testimony that all the work was performed in a good and workmanlike or carpenterlike manner; that the new structure, including the cabinet work, was level, straight and plumb in all particulars and that good results were obtained in joining it with the older structure.

John Hazel, one of the appellants, testified that about June 27, 1961, he and respondent agreed that the cost of the addition would not exceed $3500. He stated that where the roof of the new structure joined the old portion of the roof, the construction did not match, and that there was a distinct sag in the middle portion of the roof; that the cement block foundation under the new addition was not set straight in that it "jogged." The floor in the new portion of the kitchen was not level, in that it sloped downward to the outside wall. The kitchen ceiling had an appearance of being "kind of corrugated," and wasn't level. The "built-ins" or cabinets installed

in the kitchen were not level, discernible with the naked eye; the new floors upstairs all sloped toward the exterior of the new addition. The upstairs rooms were not square, and such defects also could be discerned with the naked eye. He identified over 20 photographs, introduced in evidence, of various phases of the work and installations intended to show the unworkmanlike construction, some of which show by actual measurements the deviations from "level" or "plumb" of certain portions of the work; also to illustrate the faulty and unworkmanlike construction of the new roof, including where it was joined with the old roof.

Appellant further testified that respondent placed a cement footing for the fireplace, which did not support the weight of the fireplace and its chimney constructed upon this footing; as a consequence the chimney sagged away from the building. The fireplace and chimney had to be "jacked up" and a substantial cement foundation placed under the footing; thereby the fireplace and chimney were properly placed "plumb" with the building.

Appellant Hazel also testified that the door leading from the kitchen to the outside caused problems, because it was placed very close to the kitchen cabinets; also, there was no door jam on the right-hand side of the door. One of the photographs submitted in evidence showed this defect.

Appellant Mrs. Hazel corroborated the testimony of her husband.

Joseph Jacob, called by the defense, testified that he had followed the business of both carpentry and contracting for some 35 years. He had built houses and done a lot of remodeling. After February 24, 1962, he examined the addition to the Hazel property, constructed by respondent. He observed the chimney sagging away from the house. All of the workmanship was very poor. The roof had a definite sag of about four inches in the center portion. He found no collar braces to support the roof area; there were some strap braces intended to support the roof but they were not installed properly. It was a long roof; there were no plate braces installed to hold up the rafters. Such an installation would have held the roof straight and prevented the sag. The roof could be jacked up and the proper bracing installed, thereby to straighten the roof.

The newly constructed wall upstairs was not plumb; the closet doors did not fit. Mr. Jacob described defective workmanship in the area of the dormers. The floors upstairs in the new construction sloped downwards an inch in 9 feet of width—that much out of level. The closet doors did not work properly. The doors in the upstairs bedrooms were not put in straight and plumb.

Mr. Jacob further testified that the newly constructed ground floor sloped downwards

toward the outside wall, one and a half inches in 9 feet; there was no casing on the inside of the back door because the kitchen built-ins were installed within one-fourth of an inch of the door. In his opinion, based upon his many years of building and contracting experience, none of the construction was in good workmanlike manner.

·Concerning the cost of remedying the unworkmanlike condition Mr. Jacob testified:

"Q. What would it cost, in your opinion, based upon your examination of the premises and your experiences as outlined, * * * to put the premises in a carpenterlike condition at the place of John Hazel?

. * * * * * *

"A. My best estimate I come up with is $1,700, for labor and $600 for material to finish the job in first class shape. That is not including the built-ins because I figured the builtins could be torn out and some of the material salvaged but I don't know how much.

"Q. Does that include painting?

"A. * * * No, doesn't include painting.

"Q. It would be only fixing the roof and squaring up the kitchen?

"A. Squaring up the kitchen.

"Q. Floors and upstairs?

"A. ·That's right.

* * * * * *

"Q. What else are you going to do for the $1700. labor and $600. materials?

"A. The first thing I would have to do is get some jacks and jack up the house so it was level, just jack it up and when I done that it would throw the back wall plumb again, which would be fine, and then the kitchen window has to come out and be set over about 4 inches and tear the builtins out and remodel them and put them in proper and then we have to go upstairs and cut the dormers loose under the upstairs ceiling and jack the roof up and ceiling in there so as to get that sag, because you cannot jack that up because the dormers are fastened to the parts below, so you would have to cut them and put some braces, some 2 x 4's or 2 x 6's and jack that up and brace the roof, and then you have to tear some of the walls off the upstairs and straighten those walls and re-rock, tear some of the sheetrock off upstairs walls and straighten the walls and re-rock there and put new sheetrock on and tape it and in the end you might have to take the dormers off. Might have to remove those dormers and put them back on. You see that roof, it's a long roof without braces, and that roofing that is on there, I don't know whether that is 210 or 235

that is on there, and it means if it is 235 there is 235 pounds for each 10 square feet, for each 100 feet, and take a roof that size it is a lot of weight on a roof and that is what sagged that roof, it wasn't braced."

Frank Wester, a licensed contractor who engages generally in building and contracting and had been so engaged for 18 years, was called by the defense. He testified that he inspected the Hazel property at the request of appellants. During November 1961, he observed the fireplace and chimney, leaning and separated from the house. During February 1962 he, in company with Mr. Jacob, inspected the entire new addition constructed by respondent. He testified concerning the various defects and the unworkmanlike performance of the work, as did Mr. Jacob. He stated that in his opinion it would cost $2000 in labor and material to "put the property back in good carpenterlike methods of construction."

Respondent, on rebuttal, referring to the various details of the construction, stated that in his opinion "items which are clearly shown, small defects, could probably be remedied by one man in eight hours." He had no explanation for the fact that portions of the addition were not level, out of "plumb" and did not fit, other than to say that everything was "OK" when he left the premises during September 1961.

Respondent explained the defect in the roof, where the old and the new roof joined, by stating the roof wasn't constructed according to present day specifications but he did not explain why the work had not been braced as it ought to have been to meet workmanlike standards according to builders Jacob and Wester.

Respondent had no explanation for the leaning of the fireplace and chimney, placed upon the cement slab which he constructed for the purpose, other than to say that he did not construct a "foundation" for the fireplace. The fact that appellants did not furnish him specifications for the slab, as the trial court found, did not excuse respondent from the responsibility of workmanlike construction as an asserted experienced builder, inasmuch as the record is repetitive of the fact that appellants lacked experience as carpenters and builders.

The trial court resolved the conflicting evidence as regards the nature of the contract, in respondent's favor. It found that although respondent gave appellants an estimate of the cost of the work, changes were made as the work progressed, and that appellants hired respondent "on a time and material basis."

The court resolved the conflict in the evidence as to whether the work had been performed in an unworkmanlike manner, in favor of appellants and attempted to penal-

ize respondent therefor by disallowing him an attorney's fee in the lien foreclosure proceeding.

The court resolved the evidence as to damages in respondent's favor. However, the evidence in that regard is not conflicting. Respondent did not controvert the testimony of appellants' experts showing the many instances of unworkmanlike or "uncarpenterlike" work, supported by actual illustrative measurements, nor the methods proposed by those experts to remedy the same, particularly the uneven floors, walls, ceilings and roof. The conflict was in the matter of opinion, whether in the opinion of respondent and his witnesses all of the defects resulting from the unworkmanlike and faulty construction could be remedied in a matter of eight hours, or whether in the opinion of appellants'.witnesses, greater expenditure in time and material would be required.

We are not impressed with respondent's testimony that the unworkmanlike work could be remedied by one man in 8 hours, unless as his testimony indicates he meant the "clearly shown, small defects." In that regard the evidence presents a state of facts and circumstances pointing to the inherent improbability of the truth of the theory advanced by respondent, and the truth of that of appellants. National Ro-Tile Corporation v. Loomis, 82 Idaho 65, 350 P.2d 217 (1960); In Re Oldberg's Estate, 67 Idaho

447, 454, 182 P.2d 945, 949 (1947); First Trust & Savings Bank v. Randall, 59 Idaho 705, 89 P.2d 741 (1939); Pierstorff v. Gray's Auto Shop, 58 Idaho 438, 447, 74 P. 2d 171, 175 (1937).

" * * * There is a substantial performance of a contract to construct a building where the variations from the specifications or contract are inadvertent and unimportant and may be remedied at a relatively small expense and without material change of the building; but where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract." White v. Mitchell, 123 Wash. 630 at 637, 213 P. 10 at 13 (1923).

See also Forrester v. Craddock, 51 Wash.2d 315 at 321, 317 P.2d 1077 at 1082 (1957); Mackey v. Eva, 80 Idaho 260, 328 P.2d 66 (1958).

█ There is evidence to show, and the trial court held, that the work had been performed in an unworkmanlike manner, which necessarily presupposes that expenses of repair will result. The construction was not substantially performed within the meaning

of the law when evidence shows, inter alia, that the floors and ceilings sloped, the rooms were not square, the roof sagged due to improper bracing, and the foundation was not true and plumb. The mere fact that a shell was constructed containing the rooms outlined in the contract, does not in itself mean that the contract was substantially performed. The evidence shows noncompliance with the required test.

A mechanic's or materialman's lien may not be enforced where the contract under which the parties are bound is not substantially performed. Birkemeier v. Knobel, 149 Or. 292, 40 P.2d 694 (1935). See Knoblock v. Arenguena, 85 Idaho 503, 380 P.2d 898 (1963), in which a well driller was not allowed foreclosure of a laborer's or materialman's lien when it was shown that the work had not been performed in a workmanlike manner and that therefore, the contract had not been substantially performed. See also Mackey v. Eva, 80 Idaho 260, 328 P.2d 66 (1958). Although the statute, I.C. § 45–501, does not specifically require substantial performance of a contract before a lien attaches, it is inherent in the law that a person may not enforce collection under a contract which has not been performed. The trial court found that while the work was not done in a workmanlike manner, the contract had been substantially performed. A construction contract that is not performed in a workmanlike manner is not substantially performed and it was error so to hold.

The trial court also found that appellants were not entitled to a set off for necessary repairs to the addition because money damages were not properly shown. The trial court held that the estimate by the witness, Joseph Jacob, was hinged on placing the building in a No. 1 shape, rather than restoring it to workmanlike (or carpenterlike) condition. That conclusion is not supported by the testimony heretofore set out in detail. Jacob testified he spent eight hours in making his estimate, and while it was not broken down to specific charges for specific acts in the repair, it clearly appears that his estimate did not include the finishing work or painting that was excluded from the contract between appellants and respondent. The fact that Jacob, when asked what his estimate was to put the premises in "carpenterlike" condition, answered in terms of "first class shape," certainly does not imply more than workmanlike or "carpenterlike" condition. To disregard entirely Jacob's testimony, as well as that of Mr. Wester, as to necessary repairs and costs, was error.

The judgment of the district court is reversed and the cause is remanded with instructions to the court to assess the damages sustained by appellants and enter judgment

accordingly, and to that end, take any additional evidence as may be deemed requisite.

Costs to appellants.

McQUADE, C. J., and McFADDEN, TAYLOR and KNUDSON, JJ., concur.