536 P.2d 729

**ENTERPRISE, INC., dba Nampa Sanitary Service, Plaintiff-Appellant,**

v.

**NAMPA CITY, a Municipal Corporation, and the Mayor and City Council of Nampa City, consisting of Ernest Starr, et al., Defendants and Respondents,**

and

**Thos. Y. Gwilliam, for himself and all other persons similarly situated, Intervenor.**

No. 11278.

Supreme Court of Idaho.

June 10, 1975.

M. Allyn Dingel, Jr., of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for plaintiff-appellant.

Leon R. Weeks, of Weeks, Yost & White, P. A., Nampa, for defendants-respondents.

McQUADE, Chief Justice.

This action was brought by plaintiff-appellant Enterprise, Inc., doing business as Nampa Sanitary Service, (hereinafter appellant) against defendants-repondents City of Nampa, a municipal corporation, and the mayor and city council of Nampa, (hereinafter respondents) for damages resulting from an alleged breach of a municipal garbage and refuse service contract. Thos. Y. Gwilliam, as intervenor, is not a party to this appeal.

Appellant, an Idaho corporation organized to engage in the business of trash and garbage collection and hauling, entered into a contract on April 17, 1967, with respondent city to provide garbage and refuse service. The contract awarded an exclusive right and privilege for a term of five years to appellant to collect, transport and dispose of all garbage, rubbish and trash from premises designated by the respondent city. Appellant was given the option of renewing the contract for two five year terms. A schedule of rates for appellant's services was made part of the contract. It provided that the rates set out in the contract could be modified, but that no change could be made until approved by the respondent city council.

During the term of the contract there were numerous complaints from the citizens of Nampa city concerning the quality of appellant's service. In an attempt to develop solutions to these problems, numerous official and unofficial meetings were held between appellant's officers and the mayor and city council of respondent city. A continuous contention of appellant was that the rates were inadequate. A rate increase was granted at appellant's request on or about April 20, 1970. This was found by the trial court to be the first time a formal request was made for a rate increase.

On or about August 3, 1970, appellant filed a petition in the Federal Court for a declaration of bankruptcy under Chapter XI of the Federal Bankruptcy Act. A receiver in bankruptcy was appointed to take over appellant's operations. The receiver entered into negotiations with respondents for a rate increase for the purpose of continuing the contract and securing additional financing. The respondent city council did grant a substantial portion of the requested increase, with a stipulation that the increase was only for ninety days subject to a showing to the council's satisfaction that service had improved. This was not acceptable to the receiver. A counter offer was made by the receiver that an impartial board be appointed to determine if the service had improved. This was rejected by the respondent city council.

Negotiations between the receiver and the respondent city broke down on or about August 19, 1970. The receiver thereupon stopped the collection of refuse and garbage. The respondent city employed another refuse collector to perform this service. On August 20, 1970, the receiver petitioned the Federal District Court to terminate the operation of appellant's business. Pursuant to an order of the Federal District Court dated August 21, 1970, operation of the business was terminated due to a lack of funds to operate and a failure to receive a rate increase from the respondent city. On September 9, 1970, the referee in bankruptcy dismissed the bankruptcy proceedings. No order was entered adjudicating appellant bankrupt.

On September 8, 1970, respondents served a notice upon appellant that a public hearing would be held on October 5, 1970, at which time appellant would be given an opportunity to appear and be heard to show cause why its contract with respondent city should not be forfeited as of August 20, 1970, because of repeated violations of the terms of the contract by appellant. Four alleged contractual violations were set forth in this notice to show cause. An amended notice to show cause was served upon appellant on September 11, 1970, incorporating an additional alleged violation of the contract.

A public hearing was held on October 5, 1970, at which time appellant was afforded an opportunity to make a showing concerning the alleged violations of the contract as set out in the notice and amended notice to show cause. The trial court found that appellant declined to show at this hearing that the alleged breaches had not occurred. On or about October 13, 1970, the respondents mayor and city council adopted a resolution terminating the contract retroactively as of August 20, 1970, for the violations set forth in the notice and amended notice to show cause.

Appellant filed this action on October 22, 1970, for damages due to breach of contract and for specific performances of the contract. The alleged breaches involve: in Count I, that the respondents mayor and city council arbitrarily and capriciously refused to grant requested rate increases; in Count II, that the respondents mayor and city council acted maliciously and with a wanton disregard for appellant's reputation in withholding rate increases, thus warranting the awarding of punitive damages; in Count III, that breach of the contract by respondents prevented the appellant from performing, causing a loss of profits; in Count IV, that respondents' termination of the contract without compensating appellant for the loss of its routes and rights to operate amounted to a confiscation of appellant's property without due process; and in Count V that respondents failed to pursue the contract procedure for declaring a forfeiture, that respondents should therefore be ordered to: (1) terminate any agreement with any trash haulers operating in Nampa, (2) rescind the ordinance purporting to void the contract with appellant, and (3) allow appellant to continue to operate within the city. By stipulation, the parties agreed that the specific performance aspect of Count V of the complaint would be dropped. Respondent city counterclaimed for damages it alleged it suffered as a result of appellant's cessation of operation on August 19, 1970.

The trial court dismissed the action against respondent city of Nampa. It found that the complaint did not allege, nor was any proof offered at the time of trial that any notice of claim was served upon respondent city as required under I.C. § 50–219. The trial court dismissed Count III of the complaint as against respondents mayor and city council, but did, however, address itself to the merits of appellant's other claims as against these officials. Its conclusions can be summarized as follows: respondents mayor and city council did not act in an arbitrary and capricious manner in failing to grant rate increases to appellant; the termination of the contract was a result of appellant's breach, and was not done with a malicious or wanton disregard for the reputation of appellant; respondents did not breach the contract and any loss of contract benefits suffered by appellant was not a ground for relief; appellant was not entitled to compensation for the value of the contract because of its own abandonment; termination of the contract was justified due to a substantial and material breach by appellant, and termination was exercised in accordance with the contractual terms. The trial court also dismissed respondents' counterclaim, as no evidence was offered in support of it. Judgment was entered ordering and adjudging that appellant take nothing and that its action be dismissed upon the merits. It is from this judgment that appellant brings this appeal. We *affirm*.

█   In its first assignment of error, appellant argues that the sixty days notice of claim provision in I.C. § 50–219 does not apply to the case at bar because this is an action for breach of contract, and the provision in issue applies only to tort claims against a city. Alternatively, appellant insists that even if the notice of claim provision is applicable, it was substantially complied with and therefore the trial court committed error in dismissing its claim against the city of Nampa.

We cannot accept the restrictive interpretation appellant would place upon the

applicability of I.C. § 50–219. The statute reads as follows:

"Damage claims.—All claims for damages against a city must be filed with the city clerk within sixty (60) days after the time when such claim for damages shall have occurred; specifying the time, place and probable cause of said damage. No action shall be maintained against the city for any claim for damages until the same has been presented to the city council, and until sixty (60) days shall have elapsed after such presentation. The payment of any and all damage claims by the city shall be by resolution, and not otherwise."

The trial court found that compliance with I.C. § 50–219 was not alleged in appellant's complaint, nor was there evidence offered by appellant that it had filed a notice of claim with respondent city. The trial court concluded that the complaint should be dismissed against the respondent city. While we agree with this conclusion, we arrive at it from a somewhat different line of reasoning than that indulged in by the trial court.

█ A review of the record indicates that a letter from appellant's counsel dated September 11, 1970, was sent to the city clerk, city councilmen, and mayor of respondent city informing them of appellant's belief that it had a bonafide contract with the city to provide garbage service and that any attempt to award a contract to any other party would be deemed a material breach of the contract resulting in litigation for damages. These letters apprised respondents of the fact that should they award the refuse contract to another garbage service, as indeed they did, litigation based upon a breach of contract would be imminent. This letter was notice under I.C. § 50–219 and afforded the respondent city and its elected officials an ample op-

portunity to investigate appellant's alleged claim and in so doing to assess the city's liability, if any, with respect thereto.[1] Appellant filed its complaint in district court on October 20, 1970. This was before the lapse of sixty days after respondents were informed via appellant's letters of the nature of appellant's claim on September 11, 1970. This action was contrary to that part of I.C. § 50–219 which provides:

"No action shall be maintained against the city for any claim for damages until the same has been presented to the city council, and until sixty (60) days shall have elapsed after such presentation. * * *"

Therefore the trial court was correct in dismissing appellant's claim against respondent city on the ground that there was no compliance with I.C. § 50–219.

█ In its second assignment of error, appellant argues that the respondents were arbitrary and capricious in refusing to grant justified rate increases, and that the refusal to do so constituted an intentional breach of the contract. The contract entered into on April 17, 1970, included a schedule of rates to be charged by the appellant which was agreed upon by both parties. The contract also included a provision whereby the rates could be changed or revised subject to the approval of the city council of respondent city. This provision did not automatically grant appellant rate increases at its demand, but rather required approval of the city council. As McQuillin in his treatise on Municipal Corporations notes:

"* * * no principle of law is better established than that courts will not sit in review of proceedings of municipal officers and departments involving legislative discretion, except, as hereafter noted, in cases of fraud, corruption, or

---

1. *See* Cox v. City of Pocatello, 77 Idaho 225, 291 P.2d 282 (1955); and Weaver v. Village of Bancroft, 92 Idaho 189, 439 P.2d 697 (1968), for cases where letters sent to the city were deemed to have substantially complied with the applicable notice of claim provisions.

arbitrary, unreasonable actions amounting to abuse of discretion."[2]

Thus this Court will not interfere with respondent city council's discretion to grant or withhold rate increases, pursuant to the terms of the municipal garbage and refuse service contract with appellant, unless it is clear that respondent's action in that regard amounted to an abuse of discretion.

Appellant does not allege that the respondent city council's actions regarding modification of the rate schedule were fraudulent or corrupt. Rather it contends they were unreasonable because they were done in an arbitrary and capricious manner. For the city council's actions to be deemed "arbitrary or capricious," it must be shown that its actions were done without rational basis;[3] or in disregard of the facts and circumstances presented;[4] or without adequate determining principles.[5] Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.[6]

The record indicates that respondent city council did not act arbitrarily or capriciously in its handling of any request for a rate increase so as to constitute an abuse of discretion. The preponderance of the evidence indicates that no formal request for a rate increase was ever made to the city council until April of 1970, at which time it was immediately granted. Appellant argues that it made several in-formal requests for increases which were never acted upon. Yet appellant concedes in answer to one of respondents' interrogatories, that none of these informal requests were made at a regular council meeting where business of this nature was presumably handled; that none of these informal requests were reduced to writing or filed with the city clerk, and that many of these informal requests failed to specify the monetary increase desired. Assuming arguendo that these informal, unwritten, and arguably improperly presented rate increase requests can be characterized as valid, (necessitating some actions on respondents city's part) it still cannot be said that the city council's failure to grant them was "arbitrary or capricious."

Respondent city council was under no obligation to accede to all of appellant's requests. Nowhere in the record is there any indication that appellant accompanied these "informal" requests with a promise that service would improve should they be granted. In light of the many complaints from Nampa residents that appellant's services were substandard, the city council's unwillingness to grant rate increases was understandable and reasonable under the circumstances. It is not this Court's function to substitute its judgment for that of the duly elected governing body of a city, in regard to the exercise of its discretionary power, where such an exercise is not shown to be arbitrary, capricious or unreasonable.[7]

2. 2 McQuillin, Municipal Corporations § 10.33 at 823–25 (3rd ed. 1966).

3. *See* Bicknell v. United States, 422 F.2d 1055 (5th Cir. 1970); Canty v. Board of Education, City of New York, 312 F.Supp. 254 (S.D.N.Y.1970); Bayshore Sewerage Co. v. Department of Environmental Protection, 122 N.J.Super. 184, 299 A.2d 751 (1973), aff'd 131 N.J.Super. 37, 328 A.2d 246 (1974).

4. *See* Dupont-Fort Lewis School District No. 7 v. Bruno, 79 Wash.2d 736, 489 P.2d 171 (1971); East Tex. Motor Freight Lines v. United States, 96 F.Supp. 424 (N.D.Tex. 1951); Milwaukie Co. of Jehovah's Wit-nesses v. Mullen, 214 Or. 281, 330 P.2d 5 (1958), appeal dismissed 359 U.S. 436, 79 S.Ct. 940, 3 L.Ed.2d 932 (1959).

5. *See* United States v. Carmack, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209, 218 (1946); Chapman v. Public Utility Dist. No. 1 of Douglas Co., Wash., 367 F.2d 163 (9th Cir. 1966); First National Bank of Fayetteville v. Smith, 365 F.Supp. 898, 903 (W.D.Ark.1973).

6. *See* In re West Laramie, 457 P.2d 498 (Wyo.1969); Petition of City of Bellevue, 62 Wash.2d 458, 383 P.2d 286 (1963).

7. *See* Larsen v. Village of Lava Hot Springs, 88 Idaho 64, 396 P.2d 471 (1964); Sulphur

Nor can respondent city council's actions in dealing with the court-appointed receiver after appellant had filed its petition in bankruptcy be deemed "arbitrary and capricious." The receiver proposed a rate increase in August of 1970 which was granted in substantial part by the city council with a stipulation that the increase was only for a ninety day period subject to a showing that service had improved. The city council believed it to be their decision, as the elected representatives of the citizens of Nampa, to determine whether service had improved sufficiently to justify an extension of the increase beyond the ninety-day trial period. The receiver thought this condition unreasonable, and tendered a counter proposal whereby an impartial review board would determine after the expiration of the ninety days, whether a continuation of the rate increase was warranted. The city council rejected this counter proposal. Under the circumstances, considering appellant's past service record, and in light of what the city council deemed was its responsibility as the elected governing body of respondent city, we are unable to find its rejection of appellant's counter-proposal to be so arbitrary and capricious as to amount to an abuse of discretion.

In its third assignment of error, appellant attacks the trial court's conclusion of law that it had breached the contract. The trial court found that appellant failed to perform under the terms and provisions of the contract after August 19, 1970, until October 5, 1970. From this finding of fact, which is supported by competent and substantial evidence, the trial court concluded that the contract had been breached in a material and substantial manner thus giving the respondents the legal right under the terms of the contract to terminate it. We agree with the trial court's conclusion.

Springs Val. Elec. Coop. v. City of Tombstone, 99 Ariz. 110, 407 P.2d 76 (1965); Tamblyn v. City and County of Denver, 118 Colo. 191, 194 P.2d 299 (1948).

The Restatement of the Law of Contracts defines a breach of contract as follows:

"§ 312. Breach of Contract Defined.

A breach of contract is a non-performance of any contractual duty of immediate performance. A breach may be total or partial, and may take place by failure to perform acts promised, by prevention or hindrance, or by reputation." [8]

A total breach of contract

" * * * is a non-performance of duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." [9]

On April 17, 1967, appellant undertook to perform garbage removal services for the respondent city, for a period of five years. A little more than three years later on August 19, 1970, it ceased to continue its operations. Appellant's failure to perform after that date was not a trivial or insignificant omission, but rather went to the essence of its contractual obligation. On the facts before it, the trial court was justified in treating this failure to perform as a material breach of the contract, giving respondents the legal right pursuant to the terms of the contract to terminate.

In its fourth assignment of error, appellant contends that the trial court erred in concluding that respondent complied with the forfeiture and termination provision of the contract. Appellant specifically attacks (1) the validity of the notice received; (2) the format of the hearing held concerning the notice to show cause, and; (3) the effective date of respondents' termination order. We will deal with appellant's contentions in order of presentation.

The pertinent provision of the contract addressing itself to forfeiture provides:

"It is further understood and agreed that this agreement, together with all rights

8. Restatement of the Law of Contracts § 312 (1932).

9. 4 Corbin on Contracts § 946 at 809 (1951).

hereunder, shall become forfeited by repeated violation, or violations, of any of the terms hereof, provided in such event, acts of God or strikes are excepted, and the City shall give the Contractor or Collector twenty (20) days' written notice to show cause before the City why this contract should not be forfeited on or after the date to be mentioned in said notice, and said notice shall be served upon the Contractor by the City, and a public hearing shall be had thereon before the City before any default or forfeiture can be declared unless the matter is corrected by the said Contractor prior to hearing and the right to appeal to the District Court is herein allowed; provided, further, that if, due to labor difficulties or strikes, the Contractor ceases operation or fails to satisfactorily perform the conditions hereof, the City then reserves the right to perform such services as are deemed necessary to carry out the service of hauling and disposing of garbage and refuse for the health and welfare of the community, and in such event, the City shall be entitled to its proportionate share of rates charged for the removal and disposal of refuse and garbage."

Under the terms of this paragraph respondent city was given the option of terminating the contract after repeated violation or violations of any of its terms. Before it could do so, however, it was required to give appellant written notice of the alleged violations. Appellant would then have twenty days to correct them prior to a public hearing. At the public hearing, appellant would be given the opportunity to demonstrate that the alleged violations had not occurred or had been corrected. We have reviewed the record and do not find any failure by respondent city to comply with the letter of these requirements before it terminated the contract.

Appellant received notice on September 8, 1970, that a public hearing would be held on October 5, 1970, to determine why the contract should not be forfeited because of four alleged violations of the contract. The alleged violations were:

"1. Failure to haul garbage and refuse of the City of Nampa, Idaho, in a clean and workmanlike manner, in accordance with the terms of said Contract;

2. Failure to pick up and haul garbage and refuse in accordance with the terms of said Contract;

3. Failure to provide and file with the said City a performance bond in the sum of $50,000.00 in accordance with the terms of said Contract

4. By the said Enterprises, Inc., doing business as Nampa Sanitary Service, filing insolvency proceedings in the Federal Court of the State of Idaho, and the receiver appointed in said proceedings for Enterprises, Inc., doing business as Nampa Sanitary Service, failing to arrange for the hauling of garbage and refuse in accordance with the terms of said Contract, and in fact having abandoned said Contract, failing to perform in any manner under the terms thereof."

On September 11, 1970, an amended notice to show cause was issued alleging as an additional contractual violation the failure to carry sufficient liability insurance. The public hearing held *twenty four* days after the amended notice to show cause was issued, clearly complied with the provision that " * * * the city shall give the contractor or collector twenty (20) days' written notice to show cause before the city why this contract should not be forfeited * * *."

The public hearing held on October 5, 1970, was also in accordance with the contract. The purpose of the hearing was to determine whether the contract between respondent city and appellant should be forfeited for the alleged violations set forth in both the notice to show cause and the amended notice to show cause. It is

apparent from the terms of the forfeiture provision of this contract that the burden of proof was to be on appellant to demonstrate at the hearing that the alleged contractual violations either had not occurred, or if they had occurred, were corrected before the hearing took place. Appellant was afforded an opportunity to do this, but declined to do so. We fail to find any infirmity with the format of the public hearing held on October 5, 1970, which would render respondent city's termination of the contract procedurally invalid.

Finally, we find no violation of the forfeiture provision of the contract in respondent city's decision made on October 13, 1970, via a city council resolution, to terminate its contract with appellant effective August 20, 1970. Appellant contends that the contract could not be declared forfeited any earlier than the date upon which a formal resolution to that effect was adopted. However the forfeiture provision of the contract provided that the contract could be terminated " * * * on or after the date to be mentioned in said notice [to show cause] * * *." The amended notice to show cause sent to appellant made mention of August 20, 1970, as the date upon which respondent city believed that the contract warranted termination due to appellant's violation of its terms. Appellant was thus apprised that if it failed to demonstrate at the public hearing that the alleged violations either had not occurred or if they had occurred were rectified, the contract would be terminated as of August 20, 1970. When appellant failed to introduce evidence at the hearing in answer to the alleged contractual violations set forth in the notices to show cause, respondent city, pursuant to the contract, was empowered to declare it at. an end effective August 20, 1970.

In another assignment of error appellant contends that its right to collect, transport and dispose of all garbage, rubbish and trash from the premises so designated by respondent city was a valuable right in the nature of property which was confiscated by respondent without due process of law when the contract was terminated. Appellant includes as part of this property asset, a route it claims it was required by respondent to buy for $88,000.00 as a condition to entering into the contract.

Respondent city council in terminating its contract with appellant was not exercising the power of eminent domain as appellant intimates. Rather it was exercising a contractual remedy afforded it pursuant to the terms of its agreement with appellant. In so exercising its contractual right to terminate, respondent fully afforded appellant the due process safeguards written into the contract. Appellant received notice which adequately apprised it of respondent city council's contemplated action. A hearing was held at which time appellant declined an opportunity to answer the allegation of alleged contractual violations set forth in the notice to show cause. The contract was not terminated for an inconsequential deficiency, but rather for a failure by appellant to perform and because of appellant's abandonment of its contractual obligation after August 19, 1970. Respondent was authorized under the terms of the contract to treat this material breach as justifiable cause for terminating the contract.

The trial court found that with one exception, all of the garbage routes in the city had been purchased by appellant prior to the time that the contract was executed, and that provision was made in the contract for the remaining garbage collector to maintain his route. Therefore, the purchase of that route by appellant was found to be its own businesss and not at the insistence of respondents. This finding is supported by competent and substantial though conflicting evidence and will not be disturbed on appeal.

Judgment affirmed. Costs to respondents.

DONALDSON, and SHEPARD, JJ., SCOGGIN, D. J. (retired), and SMITH, D. C., concur.