273 P.2d 399

HUGGINS et al.

v.

GREEN TOP DAIRY FARMS, Inc. et al.

No. 8007.

Supreme Court of Idaho.

July 12, 1954.

See, also, 74 Idaho 266, 260 P.2d 407.

Thomas A. Madden, Lewiston, and C. Orno Shoemaker, Clarkston, Wash., for appellant J. R. Standley, receiver.

440

J. H. Felton and William J. Jones, Lewiston, for respondents John D. Huggins and others.

Wynne M. Blake, Lewiston, for Carl Malmgren, special receiver.

Russell S. Randall, Lewiston, for First Security Bank of Idaho, N. A., and State Bank of Clarkston.

Cox, Ware & Stellmon, Lewiston, for Monroe Dairy Mach. Co.

Earle W. Morgan, Lewiston, for Mary L. Grant.

Langroise, Clark & Sullivan, W. H. Langroise and W. E. Sullivan, Boise, for respondents John D. Huggins and others on rehearing.

KEETON, Justice.

After decision was released in this case on March 8, 1954, on petition of respondents (plaintiffs) a rehearing was granted. Additional briefs were filed and oral argument heard. The issues presented have been by this Court re-examined. While parts of this opinion are repetition of what was formerly said, we have withdrawn the original opinion and substituted this opinion on rehearing.

On January 19, 1952, plaintiffs, respondents here, filed a complaint against the Green Top Dairy Farms, Inc., a corpora-

tion and Monroe Dairy Machinery, Inc., a corporation, asking for certain relief and for the appointment of a receiver for the Green Top Dairy Farms, Inc., and at the same time filed an affidavit stating the reasons why plaintiffs claimed a receiver should be appointed.

On this ex parte application the court, Honorable Harry J. Hanley, Judge, on the same day, without notice, appointed Carl Malmgren receiver. No undertaking on the part of plaintiffs to indemnify defendant from a wrongful, malicious appointment, or an appointment without sufficient cause, was required or given. Sec. 8-603 I.C.

The Green Top Dairy Farms, Inc., appellant here, will, except where otherwise indicated, be referred to as defendant.

In the order appointing receiver, his bond was fixed in the sum of $5,000 and later increased to $10,000. The value of the property of defendant, for which a receiver was appointed, was far in excess of $100,000. Thereafter numerous proceedings were had, an affirmative defense and cross complaint filed, claims presented, charges and counter charges made, a general receiver in another action, J. R. Standley, appointed.

Certain issues connected with the subject matter were formerly before this Court in Abbott v. Grant, 73 Idaho 77, 245 P.2d 797; Huggins v. Green Top Dairy Farms, Inc., 74 Idaho 266, 260 P.2d 407.

The court heard the matter on issues joined, and on January 12, 1953, Honorable Albert J. Graf, presiding Judge, entered findings of fact, conclusions of law and decree favorable to plaintiffs, respondents here.

In its cross complaint, Green Top Dairy Farms, Inc. prayed for damages by return of the payments made on the contract hereinafter referred to; damages for alleged wrongful termination of the agreement by plaintiffs; damages for the wrongful appointment of a receiver, the sequestration of its personal property.

Mary L. Grant, one of the sellers named in the contract herein referred to, did not join as a party plaintiff, was thereafter joined as a party defendant, but the proceedings as to her were by consent of all parties dismissed.

The trial court among other things decreed that plaintiffs and Mary L. Grant are the owners of certain real estate described in the contract herein referred to; that the receiver Carl Malmgren be awarded $3,492 for his services; that his attorney, Wynne M. Blake, be awarded $500 as attorney fees for services for the receiver; that J. H. Felton and William J. Jones be awarded $4,000 as attorney fees. Further that plaintiffs have and recover from Green Top Dairy Farms the sum of $8,590.10, plus the amount allowed the receiver, and the attorneys, a total of $16,582.10, and costs in the sum of $95.75. The decree further dismissed the cross complaint of

defendant and ordered the receiver to turn over to various parties named therein numerous pieces of property belonging to them. From the decree so entered the Green Top Dairy Farms, Inc. and J. R. Standley, receiver, appealed.

The material facts are not in dispute and if there is a conflict in the evidence on any material issue, we will view the evidence in the light most favorable to respondents.

The seven plaintiffs, together with defendant Mary L. Grant, are the heirs of Benjamin F. Huggins, Sr., deceased. In the fall of 1950 such heirs owned a 60% interest, and the estate of Benjamin F. Huggins, Sr., deceased, owned a 40% interest in the property and business known as the Huggins Dairy, which was a going dairy concern, located in the city of Lewiston.

On October 31, 1950, the heirs, together with Harley L. Grant, administrator of the estate of Benjamin F. Huggins, Sr., deceased, entered into a conditional sales agreement covering such property with defendant. This sales contract is the basis of this suit.

By the terms of the contract, plaintiffs agreed to sell and defendant agreed to buy the real and personal property of the Huggins Dairy. For such real and personal property, excluding some stock in trade and merchandise kept for sale, payment for which was otherwise provided for, defend-ant agreed to pay $136,250. The contract, carefully prepared, specified in detail the rights and liabilities of the parties thereunder.

$3,257.62 of the purchase price was to be paid by the assumption by the buyer of certain indebtedness outstanding, owed by the sellers. With the down payment and the assumption of these items, there was left a balance unpaid on the contract of $123,592.38. This balance was to be paid in various installments as specified in the contract, and among other payments provided that $9,999 of the purchase price was to be paid as follows: $909 on the 15th of February, 1951, and $909 on the 15th day of each and every month thereafter through the year 1951; and $835 on the 15th day of January, 1952.

The estate of Benjamin F. Huggins, Sr., deceased, the owner of a 40% interest in the property sold was in process of probate and it was necessary to institute proceedings in the probate court to get confirmation of the sale. The necessary proceedings were had and the sale confirmed.

The contract provides:

"In the event said sale is confirmed to Green Top [defendant] Grant [administrator of the estate of Benjamin F. Huggins, Sr., deceased] shall execute and deliver to Green Top a deed and bill of sale to estate's interest in said property required hereby. Simultaneously therewith, heirs [eight in

number] shall execute and deliver a deed and bill of sale to their interest in said property. Also simultaneously therewith Green Top shall execute and deliver to Grant, and to the heirs, the instruments herein required, namely exhibits B, C, D & E."

The administrator's deed and bill of sale referred to in this paragraph, after confirmation of the sale, were neither executed nor delivered.

The exhibits referred to were: "B" a promissory note for $123,592.38, being the balance due on the contract after down payment and other credits; "C" real estate mortgage; "D" chattel mortgage; "E" chattel mortgage. The real estate and chattel mortgages given to secure the promissory note covered the real and personal property described in the contract of sale. All of these exhibits were executed by defendant and tendered for delivery to plaintiffs on January 12, before the defendant took possession of the property, and again on January 19, and tender of delivery was kept good and available throughout the period of defendant's possession, and up to the time of the commencement of the action. The deed and bill of sale to be executed and delivered by the heirs, respondents here, conveying the property to defendant, were executed by the heirs but never delivered. There was no such delivery ever tendered or offered pursuant to the terms of the contract. If plaintiffs had performed the contract as required by its terms, the contract would have been superseded for the most part by the deed, bill of sale, note and mortgages.

Defendant took possession of the business and property so sold on January 15, 1951, and continued in possession until the receiver was appointed on January 19, 1952.

On the 16th of January, 1952, plaintiffs gave defendant a written notice claiming that it was in default on the contract in the following particulars: payment of $909 and interest due November 15, 1951; payment of $909 and interest due December 15, 1951; payment of $909 and interest due January 15, 1952; also claimed failure to pay $8,590.10 claimed due under paragraph 12 of the contract, covering merchandise and other items. Plaintiffs by this notice also claimed taxes defendant should have paid were in default in the sum of $453.52; that certain personal property had been sold and the total amount by said notice claimed due was $12,134.02, plus the taxes. In default of paying this amount, defendant was advised by said notice that plaintiffs would demand possession of the property covered by the contract on the 19th day of January, 1952, at 9:30 a. m. According to the contract the January installment was fixed at $835 and not $909 as stated in the notice.

Within the time specified in the notice, defendant tendered the amount claimed due by reason of default in installment payments, offered to pay the taxes, and advised plaintiffs in writing that the amount

claimed as a balance for stock in trade and personal property purchased and sold, and other items, was an unliquidated amount, subject to divers offsets, and would in substance, be paid when the amount could be determined as provided for in the contract.

At the time specified in the notice, January 19, 1952, at 9:30 a. m., one of the plaintiffs, accompanied by his attorneys, appeared at the site of the creamery business of defendant and demanded possession, which was refused. Defendant again tendered the amount of the installments claimed due, and again offered to pay the taxes, which tender and offer were again refused. On the same date, and immediately thereafter, without further negotiations or notice, plaintiffs filed the complaint, and as above stated, a receiver was appointed. Needless to say on the appointment of the receiver, defendant's business fell apart and was erased and eradicated. As a going business defendant's creamery ceased to exist.

Under the proceedings taken, no bond had been required to protect defendant from the wrongful appointment of a receiver. No hearing was had, and defendant had not been given an opportunity to be heard.

The appointment of the receiver closed a going concern, made it impossible for defendant to pay other creditors, and resulted in a severe financial loss to innocent third parties, as well as to all parties to the action.

The complaint contained a copy of the contract, the basis of the suit, and made a general allegation in the nature of a conclusion that defendant was insolvent, and plaintiffs' rights endangered. It contained no facts or allegations showing insolvency, and set forth nothing that could in anywise endanger the alleged preferred claims of plaintiffs. The complaint further alleged the removal of some personal property to a place other than the site of the business of defendant, but did not specify any articles that had been so removed, and if removed, in what way plaintiffs were in anywise endangered. The part of the complaint attempting to allege reasons why a receiver should be appointed consists largely of legal conclusions, supported by no allegations of facts.

The notice above referred to of the alleged defaults or breach on the part of defendant claimed, among other things, that defendant had sold and removed equipment belonging to the Huggins heirs, but did not state what equipment, if any, had been sold or removed, or demand the return of such alleged equipment. Some of the equipment referred to had been replaced by modern, new equipment. If defendant were in default other than specified in said notice, or there had been any other claimed breach of the contract on the part of defendant, it had been given no notice thereof, or any opportunity to rectify such claimed default or breach, if any.

The facts upon which the application for receiver is founded must be alleged. Mere legal conclusions will not be sufficient. It is necessary to allege facts which show the necessity and propriety for the appointment, and that the property or fund in question is in danger of being lost, removed or materially injured. 53 C.J. 54, Sec. 44; 75 C.J.S., Receivers, § 43, p. 702; Cronan v. District Court, 15 Idaho 184, 96 P. 768. No such danger, loss, or probable injury was shown.

The appointment of the receiver, under the facts presented, and as shown by the moving papers, was improvident, wrongful, without sufficient, or any cause, was an abuse of discretion, and as hereinafter shown was based largely on false allegations contained in the complaint, and affidavit in support thereof. Before the court should have entertained the application, under the circumstances presented, defendant should have been given an opportunity to be heard and defend itself.

While the statute covering the situation, Sec. 8–603, I.C., provides that on an ex parte application for the appointment of a receiver, the court *may* require from the applicant an undertaking, such provision is to be judicially construed, and the court should, on such an application as this, require a substantial bond to be given, and in this particular proceeding on the showing made, the application for the receivership should have been immediately denied.

There were no facts or circumstances alleged which necessitated such ex parte, speedy, summary action.

Appointment of a receiver is a drastic remedy, and while an application for a receiver is addressed in the first instance to the discretion of the court, the appointment ex parte and without notice to take over one's property, or property which is prima facie his, is one of the most drastic actions known to law or equity. It should be exercised with extreme caution and only where emergency or imperative necessity requires it. Except in extreme cases and where the necessity is plainly shown, a court of equity has no power or right to condemn a man unheard, and to dispossess him of property prima facie his and hand the same over to another on an ex parte claim. 45 Am.Jur. 81, Sec. 90.

Such a harsh proceeding may, and in this instance did, deprive defendant of its property without due process of law, and in such a proceeding as this, nothing can be lost by exercising caution and much can be gained, and rights protected, by proceeding with care. In the instant case, viewing the moving papers in the light most favorable to plaintiffs, and assuming all facts properly alleged to be true, no necessity is shown and even on a cursory hearing it could and should have been immediately determined that the application was based on a false premise, and no legal ground, equitable or otherwise, existed for the appointment.

While the complaint alleged, and the affidavit asserted in paragraph 5, that the installments complained of had not been paid, the facts were that the amounts had been tendered and payment of the taxes offered the day the receiver was appointed, and the reason the installments claimed due had not been paid was simply that plaintiffs refused to accept the money when it was offered to them. This fact was not made known to the trial court when the appointment of the receiver was applied for.

Plaintiffs contend that the check given to pay the taxes was later withdrawn and would not have been honored had it been presented to the bank for payment. Payment of the taxes after the receiver had been appointed would have been a useless gesture. The harm had already been done.

■ After the appointment of the receiver had been wrongfully made, without sufficient cause, defendant moved that such appointment be vacated and again tendered the payments claimed due into court, with the exception of the unliquidated amount claimed due. The motion was denied. On the showing made, the motion should have been granted, the receiver discharged, and the property, or what was left of it, immediately returned to defendant.

■ The time stated in the notice demanding performance, although as fixed by the contract, was under the circumstances arbitrary and unreasonable.

. Pursuant to the notice given defendant by plaintiffs, defendant tendered and offered to pay all sums except the item claimed in the notice to be the sum of $8,590.10. This item had been the subject of negotiations between the parties and defendant had made several attempts to ascertain by agreement the balance unpaid. This was the only item concerning which there was any dispute. Plaintiff elected by the proceedings taken to completely wreck a going concern, jeopardize their security and engage in a series of lawsuits and proceedings, the costs of which were in excess of the total amount sued for.

Further, at the time the notice was given and this action instituted, and for a long time prior thereto, plaintiffs were and had been in default under the contract in several material particulars. They did not deliver the deed and bill of sale provided for in the contract, nor did they appoint an agent as therein required to represent them in dealings and negotiations with defendant. They failed to perform on their part the terms of the contract which would have made a determination of plaintiffs' unliquidated claim possible.

. The failure of plaintiffs to designate an agent with authority to represent them in negotiations and dealings with defendant was a matter of importance. Defendant was dealing with eight brothers and sisters, and an administrator of an estate. The parties plaintiff apparently did not agree among themselves, which made it impos-

sible to have a final decision or determination on any matter in controversy concerning the contract.

Defendant had made repeated demands that plaintiffs appoint an agent and comply with the provisions of the contract incumbent upon them to perform.

■ ██ In the demand for performance served by plaintiffs on defendant, they demanded more than they were entitled to at that time, and defendant was fully justified in not tendering the total amount claimed due, as the amount demanded was in excess of any liquidated sum.

██ Further, assuming that defendant was in default in the sum of $8,590.10 for accounts receivable, inventory, freight accounts, etc., as stated in paragraph 2 of the notice demanding performance on the part of defendant, which the facts do not show, rescission by the sellers under the circumstances presented was unwarranted. A breach, if one existed, was only incidental and subordinate to the main purpose of the contract, and a rescission is not warranted by a mere breach not so substantial and fundamental as to defeat the object of the parties in making the contract. None of the parties would have been harmed nor could the plaintiffs have lost any rights by litigating, if necessary, the dispute, if one existed, as to the unliquidated sum which plaintiffs claimed due. This unliquidated sum was not included in the fixing of the purchase price or in the notes to be made therefor. It was a sum to be later determined by procedure and methods provided for in the contract. The actual amount had never been conclusively established or agreed to which was due at least partially to the failure and neglect of plaintiffs to meet with agents of defendant. The inventory items and other sums claimed due had been the subject of discussion between the parties for some time prior to the bringing of the action and defendant had endeavored to get a meeting with plaintiffs, or some of them authorized to act, to determine the issue. The reason the meeting was not held was the failure of plaintiffs, or any of them, or their agent, to attend such contemplated meeting. The claimed sum of $8,590.10 or such amount as might by methods provided in the contract be established, and which plaintiffs claimed due, was severable from the installment payments. Where several things are to be done under a contract, and if the money consideration to be paid is apportioned to each item, the covenants are severable and independent. Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Shaw Supply Co. v. Morgan, 48 Idaho 412, 282 P. 492.

It was not contemplated or provided by the contract that plaintiffs could arbitrarily fix an amount claimed due for merchandise and other items, and demand that payment of the same be made within forty-eight hours.

 As the plaintiffs in this case had refused to perform their part of the contract in several particulars, they were not in a position to repudiate the entire contract and demand performance relative to payment for the merchandise and other unliquidated sums. 12 Am.Jur. 959, Sec. 382. Further, one cannot declare a forfeiture of a contract where he himself is materially in default. Giffen v. Faulkner, 50 Idaho 190, 294 P. 521.

 Plaintiffs argue that the contract itself provided for the appointment of a receiver. The mortgage which was never delivered did so provide. Even though the contract provided that a receiver might be appointed on the happening of certain contingencies, the statutory requisites and the jurisdiction of the court for the appointment of a receiver would have to exist before the receiver could lawfully be appointed. Mere consent does not confer the prerequisites necessary for such appointment. 53 C.J. 52, Sec. 40; 45 Am.Jur. 101, Secs. 119 and 120; 75 C.J.S., Receivers, § 35, p. 696.

In plaintiffs' brief and argument on rehearing they contend that in addition to the installment payments unpaid and the real property tax claim of $453.52, there were personal property taxes, water charges and other items unpaid. Such default, if any, was not mentioned in the notice of forfeiture and demand for possession, nor was defendant notified and given an opportunity to rectify such default, if one existed.

Plaintiffs further argue that on January 16, 1952, when the notice was given the defendant to perform, it was hopelessly insolvent. Just how such insolvency, if it existed, could in any manner affect the secured claim of plaintiffs is not pointed out. Certainly after the receiver was appointed and the business closed, if the creamery was not insolvent before, it was afterwards. By plaintiffs' wrongful act in instituting this suit and procuring the appointment of the receiver, they made the performance of the contract impossible.

An attorney representing plaintiffs had formerly advised defendant that it had no contract and offered to sell the real and personal property to it all over again. While the contract should have been superseded by the deed, bill of sale, note and mortgages, the contract was made the basis of this suit, and we have, for the purpose of decision, assumed the correctness of plaintiffs' position that the contract defined the rights of the parties.

 As plaintiffs have wrongfully repudiated and breached their solemn obligation and demanded their property back, and unjustly invaded defendant's rights, defendant is entitled to be reimbursed for all sums paid, except the sums paid for merchandise kept for sale at retail. The rule applicable to the situation is stated in 66 C.J. 1468, Sec. 1552, as follows:

"When the vendor is unable or refuses to perform his part of a contract

for the sale of land, the purchaser may elect to rescind the contract and recover the purchase money already paid, or to affirm the contract and maintain an action for damages for its breach, the purchaser having the right to elect to take whatever he can get under the contract and to hold the vendor liable for damages for the deficiency. * * "

See also 55 Am.Jur. 922 and 923, Secs. 528 and 529.

In an action for rescission of a contract of sale of real and personal property and for the recovery of the payments made on the purchase price, the reasonable rental value for the time occupied by the purchaser should be deducted from the recoverable amount so paid. Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Swick v. Mueller, 193 Or. 668, 238 P.2d 717; Bean v. Hallett, 40 Wash.2d 70, 240 P.2d 931. Defendant here is also entitled to credit and to recover from plaintiffs for reasonable value of permanent improvements made by it on realty. McMahon v. Cooper, 70 Idaho 139, 212 P.2d 657.

Under the contract defendant had made total payments to plaintiffs in the sum of $35,023.79. The merchandise was originally estimated at $10,001.53. This amount was paid in full.

In this case defendant, by its answer and cross complaint, acknowledges that performance of the contract became impossible upon the appointment of the receiver, and claims only damages.

Where one wrongfully and without sufficient cause procures the appointment of a receiver of another's property, the party thus so injured is entitled to be reimbursed for the damages sustained. Sec. 8–603, I.C.; 45 Am.Jur. 104, Sec. 123; 75 C.J.S., Receiver, § 427, p. 1099; Bowman v. Hazen, 69 Kan. 682, 77 P. 589; Thornton-Thomas Mercantile v. Bretherton, 32 Mont. 80, 80 P. 10; Lyon v. U. S. Fidelity & Guaranty Co., 48 Mont. 591, 140 P. 86; Ann.Cas.1915D, 1036, followed by annotation on page 1040; Warren v. DeLong, 59 Nev. 481, 97 P.2d 792.

The defendant sought to show damages because of the destruction of the business, prospective profits, sums spent in improving and expanding the property, and for the unlawful and wrongful appointment of a receiver. Proof of damages due to prospective profits was not established by the evidence with reasonable certainty, and is insufficient to sustain a fixed amount in this regard. A showing of gross receipts or prospective gross receipts is uncertain and speculative as to what the loss, if any, might be, and without more is not a proper criterion to determine loss. Williams v. Bone, 74 Idaho 185, 259 P.2d 810.

The amount of defendant's damages because of the closing of the business by the appointment of a receiver was not

established. Hence the defendant is not entitled to damages for the destruction of the business by the appointment of the receiver. Williams v. Bone, supra, and authorities and cases therein cited.

Defendant complains of the sequestration and conversion of property claimed to have been seized by the special receiver Malmgren and not a part of the assets on which plaintiffs had a lien and not described in the contract. If this be true, it would present a matter for determination in a proceeding against said receiver and his bondsman. A receiver would be liable for unauthorized conversion of property to the possession of which he, under the receivership, was not entitled.

When a receiver takes possession of property not included in the trust, he is liable for trespass and conversion. 45 Am. Jur. 286, Sec. 358. Hence the damage claimed by defendant for wrongful actions of the receiver Malmgren cannot be determined in this proceeding.

As plaintiffs have by this proceeding, and by decree of the court, repossessed themselves of all property covered by the contract, and the estimated value of the inventory covering supplies on hand having been paid in full, they are not entitled to a judgment against defendant for the claimed amount of $8,590.10, except the part of that amount due for sums collected, and which

should have been paid to plaintiffs and not accounted for or turned over to them, plus the value of the part of the stock in excess of the original estimated inventory sold or disposed of by defendant.

The contract sued on provides that the successful parties in the litigation shall recover attorney fees. Defendant is entitled to attorney fees in the defense of the action in an amount to be fixed by the trial court.

The judgment decreeing plaintiffs to be the owners of the real estate and personal property covered by the contract of sale is affirmed. Those parts of the judgment decreeing others to be the owners of certain pieces of machinery and property is likewise affirmed. Otherwise the decree is reversed and modified in the following particulars:

The court will enter a joint and several judgment against plaintiffs in the sum of $25,022.26 for payments made on the purchase price less the reasonable rental value of the real and personal property for the time occupied and used by defendant; for all costs of the proceedings and expenses of the receiver. Defendant is also entitled to a judgment against plaintiffs for the reasonable value of the permanent improvements made by it on the realty in an amount to be fixed by the trial court. The part of the judgment in favor of plaintiffs, respondents here, against Green Top Dairy Farms, Inc., appellant here, for the sum of $8,590.10

covering stock and supplies on hand and accounts received by defendant will be modified by deducting therefrom the reasonable value of the part of such stock and supplies taken over by the receiver Malmgren, and by also deducting therefrom the offsets defendant had accumulated against such sum. The sum of $4,000 attorney fees allowed plaintiffs' attorney, $3,492 costs of the receiver, and $500 attorney fees for receiver's attorney will be disallowed.

Defendant's cross complaint, which was by the trial court dismissed will be reinstated for the purpose of carrying out the mandate of this Court. The claim of the defendant that the receiver Malmgren possessed and converted property not covered by the contract or receivership will be left for determination in an action against such receiver for wrongful acts, if any were committed. Joint and several judgments will be entered against plaintiffs in accordance with this opinion. The receiver's bond which was by the trial court released will be reinstated. The court will hear such additional testimony as the parties desire to offer on the questions of fact herein referred to the court for determination. Costs to appellant.

TAYLOR and THOMAS, JJ., and NORRIS, District Judge, concur.

PORTER, C. J., concurs in the disposition made of the case.