688 P.2d 1221

**Flora D. ALDAPE, Plaintiff-Respondent,**

v.

**Glen LUBCKE and Barbara J. Lubcke, Defendants-Appellants.**

No. 14393.

Court of Appeals of Idaho.

Sept. 28, 1984.

Richard L. Harris, Fuller, Harris & Heise, Chartered, Caldwell, for defendants-appellants.

Debra Alsaker-Burke and Brian F. McColl (argued), McKee, Harwood & McColl, Boise, for plaintiff-respondent.

BURNETT, Judge.

This case focuses upon a forfeiture of the purchasers' interest in real estate under an installment sale contract. The primary issue is whether the seller lost her remedy of forfeiture when she prematurely requested return of escrow papers before a default cure period had expired. For rea-

sons explained below, we hold that the forfeiture remedy was not lost. A decree quieting title in the seller is affirmed.

The facts essential to our opinion are undisputed. Flora Aldape, seller, and Glen and Barbara Lubcke, purchasers, executed an installment contract for the purchase of property in Cascade, Idaho. The contract was deposited with a bank serving as an escrow holder. The contract provided that if the purchasers defaulted in their payments, the seller had the option of either terminating the contract, thereby forfeiting the purchasers' interest, or declaring the contract balance due and payable. In order to exercise either option, seller was required to notify the escrow holder of her intent to declare a default. The escrow holder then was authorized to mail a notice of default to the purchasers' "last known address." The purchasers were given thirty days after the notice of default was mailed to cure the default.

Approximately three years after the contract was executed, the purchasers' payments fell into default. After several months of nonpayment, the seller caused her attorney to notify the escrow holder of her intent to declare a default. On November 13, 1980, the escrow holder sent a notice of default by certified mail to the purchasers at an address shown in the escrow instructions. This notice was returned "unclaimed" because the purchasers no longer resided at that address. On November 18 a second notice was sent to the purchasers' correct address.

On December 15, thirty-two days after the first notice of default was sent, but only twenty-seven days after the second notice was sent, the escrow documents were returned to seller at her request. The purchasers made no attempt to cure their default until December 18. On that date a partial payment of the amount necessary to cure was tendered to the escrow holder, but it was rejected upon instruction from the seller. On February 6, 1981, eighty days after the second notice, the purchasers tendered a full payment directly to the seller but it, too, was rejected.

The seller subsequently filed suit to quiet title in the property. The purchasers answered, denying that they had received adequate notice of default and alleging that the seller had breached the contract by requesting return of the escrow documents before thirty days had elapsed following the second notice of default. Upon cross-motions for summary judgment, the district court ruled in the seller's favor. The summary judgment was certified for appeal under Rule 54(b), I.R.C.P. The court reserved for a future determination the question whether the purchasers were entitled to restitution for any payments made while the contract was in force.

On appeal the purchasers contend that the first notice of default was ineffective and that forfeiture could not be based upon the second notice because the seller had breached the contract by requesting return of the escrow papers before thirty days elapsed. The first contention is not dispositive on appeal. Even if we agree that the initial notice was ineffective, the second notice would provide an independent basis for forfeiture unless the seller had lost that remedy by breaching the contract herself. Accordingly, we turn to the question of the seller's breach.

As a predicate of discussion we will assume that the seller breached the contract by asking prematurely for delivery of the escrow papers. However, this was not an antecedent breach by the seller, excusing the purchasers' default. The purchasers had defaulted several months before the seller acted. Rather, the issue is whether the seller's breach was one that, as a matter of law, deprived her of the forfeiture remedy. In *Associated Developers Co. v. Infanger*, 85 Idaho 158, 165, 376 P.2d 496, 500 (1962), our Supreme Court held that "[o]ne cannot declare a forfeiture of a contract where he himself is *materially* in default." (Emphasis added.) Therefore, the question is narrowed to whether the seller's breach was "material."

Contract law always has distinguished between "material" and "immaterial" breaches. If a breach is immaterial,

**318**

the existing rights of the parties do not change. The contract remains enforceable although the breach may occasion liability for damages, if any can be proved. *E.g., Blenheim Homes, Inc. v. Matthews,* 119 Ohio App. 44, 196 N.E.2d 612 (1963). A material breach, on the other hand, does affect the substantive rights of the parties. "A substantial or material breach is one which touches the fundamental purpose of the contract and defeats the object of the parties in making the contract." *Rogers v. Relyea,* 184 Mont. 1, 8, 601 P.2d 37, 41 (1979). Failure by land purchasers to make payments under an installment contract is a clear example of a material breach.

■ In contrast, we believe that premature withdrawal of the escrow papers was not a material breach. The seller's action did not deprive the purchasers of their contract right to cure the existing default within thirty days after the second default notice. Indeed, as noted above, it is uncontroverted that on the thirtieth day the purchasers tendered a partial cure after the papers had been returned. The escrow holder rejected the tender upon the seller's instruction. The contract made no provision for partial cure and the seller was under no general legal obligation to accept less than the full amount due. *See* cases cited in 74 AM.JUR.2d *Tender* § 22 (1974). Nor was she under any specific statutory obligation to do so. *Compare, e.g.,* Idaho Code § 29–112 (providing that a creditor waives any unstated objections "to the *mode* of an offer of performance") *with* Oregon Revised Statutes § 81.020 (providing that a creditor must object specifically "to the *amount of money*" tendered) (emphasis added).

■ The purchasers also have contended they were denied due process of law because the default notice was inadequate under the fourteenth amendment to the United States Constitution. However, we have been cited no authority holding that the federal constitution mandates greater notice than the parties themselves provided in their contract. Moreover, the forfeiture here was entirely contractual. No state action was involved. Consequently, we deem the purchasers' reliance upon the fourteenth amendment to be misplaced. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

The summary judgment, holding that the purchasers' interest has been forfeited and entitling the seller to a decree of quiet title, is affirmed. Because the district court has reserved the issue of restitution, we do not consider today whether the forfeiture represents any penalty against the purchasers. Costs to respondent Aldape; but no attorney fees on appeal. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979) (regarding attorney fees under I.C. § 12–121) *and Ellis v. Butterfield,* 98 Idaho 644, 570 P.2d 1334 (1977) (regarding attorney fees under contract when forfeiture has occurred).

WALTERS, C.J., and SWANSTROM, J., concur.