833 P.2d 119

**MOUNTAIN RESTAURANT CORPORATION, an Idaho corporation, and Michael R. Clune, an individual, Plaintiffs–Appellants–Cross Respondents,**

v.

**PARKCENTER MALL ASSOCIATES, an Idaho joint venture, Gary L. Drown, Patrick L. Cindrich, J. Richard Jordan, Richard P. Wilcomb and Timothy R. Wilcomb, individuals, Defendants–Respondents–Cross Appellants.**

**PARKCENTER MALL ASSOCIATES, an Idaho joint venture, Counterclaimant–Cross Appellant,**

v.

**MOUNTAIN RESTAURANT CORPORATION, an Idaho corporation, formerly known as Vista Deli, Inc., Counterdefendant–Cross Respondent.**

No. 18826.

Court of Appeals of Idaho.

May 5, 1992.

---

Wishney & Elgee, Boise, for appellant. David E. Wishney argued.

Cantrill, Skinner, Sullivan & King, Boise, for respondent. Robert D. Lewis argued.

SILAK, Judge.

This appeal involves the question whether a shopping mall landlord's failure to provide the number of parking spaces specified in a commercial lease constitutes a material breach of that lease. Following a court trial, the district court found that the landlord had breached the contract, but that the breach was not material and that the tenant was not entitled to a rescission of the lease. Both parties have appealed. For the reasons explained below, we affirm the district court's ruling that the landlord breached the lease but that the breach was not a material breach. We also affirm the district court's order regarding attorney fees and costs, but remand for entry of an award of damages to the landlord in connection with a separate wrongful detainer action.

### FACTS AND PROCEDURAL BACKGROUND

Mountain Restaurant Corporation (Mountain Restaurant) leased commercial space in the ParkCenter Mall to operate a restaurant called Zac's Grill. The space was leased from ParkCenter Associates (ParkCenter), an Idaho joint venture. Michael Clune, then doing business as Vista Deli, Inc., signed the lease on December 8, 1987, as guarantor.

The lease was to run for a period of seven years. Article V(A) of the lease contract specified that there would be 500 parking spaces at the mall:

*Parking:* Lessor shall at all times during the term of this Lease including any extension or renewal thereof, maintain a general shopping center upon the property upon which the leased premises are located, which shopping center shall always have as a part thereof, or upon premises immediately contiguous or adjacent thereto, a parking area to furnish parking space without charge to all customers of the shopping center seeking parking, so that there shall be maintained at all times a minimum of 500 parking spaces to be used in the manner further described by this paragraph.

In the course of developing the mall, ParkCenter entered into two agreements which affected the amount of parking at the mall. The first agreement was a parking easement, dated May 16, 1985, which permitted customers of the ParkCenter Mall to park in the Lake Pointe Office Center parking lot which was located to the

north of ParkCenter Mall across Mallard Drive. ParkCenter had to obtain this additional parking because there were only 373 on-site parking spaces, which is approximately 25% fewer than is required by the Boise City Building Code. The easement provided 181 additional parking spaces; however, these spaces were available only on weekday evenings after 5:00 p.m. and on weekends.

The second agreement was a Cross–Covenant and Easement Agreement, dated November 7, 1986. This agreement was between ParkCenter and the ParkCenter Pointe Owners Association. It prohibited ParkCenter Mall customers from parking in the spaces on the west side of the mall. Compliance with the terms of the cross-covenant agreement was a specific condition imposed by the City of Boise when it issued the conditional use permit and building permit for the construction of the mall. Though ParkCenter entered into both of these agreements before it signed the lease contract with Clune, it did not provide copies of either of these agreements to him at the time the lease was signed. There is conflicting testimony regarding the question whether Clune had seen a different site development plan, which showed the parking available at Lake Pointe Center, prior to signing the lease.

In preparing to open Zac's Grill, Clune obtained bank loans and invested a substantial amount of money in finishing the interior of the restaurant space and in installing equipment. Zac's Grill was to be a fast-service lunch restaurant with a moderately priced menu. Clune had been in the restaurant business for several years and successfully operated a fast-service lunch deli in a different area of Boise. The peak period for this type of fast service lunch restaurant is the noon hour. Clune anticipated "turning over" the tables twice during the noon lunch hour.

Zac's Grill opened on September 1, 1988. There were immediate problems with parking due to construction vehicles and mall employees parking in the areas other than the designated employee parking area. Nevertheless, Zac's Grill operated success-fully until the Lake Pointe Center Office Building opened and the parking in that lot was restricted. Two other restaurants opened in the north end of ParkCenter Mall in the fall of 1988. TCBY opened two weeks after Zac's grill and Ducks' Bar and Grill opened in early December. All three restaurants were then competing for a limited number of parking spaces. The parking closest to Zac's would become full between noon and 12:30 p.m. each weekday. After that, the lunch traffic would decline precipitously. The evidence also showed, however, that parking was always available at other areas of the mall parking lot.

During the trial, Clune presented testimony from several former customers that they had had difficulty finding a parking place during the lunch hour and had, at times, driven through the parking lot and gone on to someplace else for lunch. Clune himself kept notes in his desk diary on the status of the parking situation. A summary of these notes was admitted as Plaintiff's Exhibit 7; Clune testified that the summary reflected an every day situation and that the lack of available parking was not limited to the specific instances listed on the summary.

Clune informed ParkCenter on several occasions that there were problems due to the lack of adequate parking. The lack of customers caused cash flow problems. Clune stopped making rental payments to ParkCenter. In an attempt to make up for the loss of lunch-time business, Clune bought a delivery truck and started delivering lunch orders outside of the restaurant. Finally, he closed the restaurant and vacated the leased premises on December 20, 1989. At that time, Clune owed ParkCenter approximately $12,000 in unpaid rent.

Mountain Restaurant filed an action for rescission of the lease contract and ParkCenter filed a counterclaim for rent that had accrued before and after Mountain Restaurant vacated the premises. Following a court trial, the district court found that ParkCenter had breached the lease, but that the breach was not a material breach. Consequently, the district court declined to grant a rescission of the con-

tract. The district court concluded that ParkCenter was entitled to collect rent for the time that Mountain Restaurant occupied the premises, but that no rent could be recovered for the period after Mountain Restaurant vacated the premises because of ParkCenter's failure to mitigate damages. The district court found that neither party had totally prevailed, and declined to award attorney fees. ParkCenter's claim for costs pursuant to I.R.C.P. 68 was also denied. These appeals followed.

## ANALYSIS

### 1. *Material Breach.*

A material breach of contract is a breach so substantial and fundamental that it defeats the object of the parties in entering into the contract. *Huggins v. Green Top Dairy Farms,* 75 Idaho 436, 447, 273 P.2d 399, 405 (1954); *Enterprise, Inc. v. Nampa,* 96 Idaho 734, 740, 536 P.2d 729, 735; *Crowley v. LaFayette Life Ins. Co.,* 106 Idaho 818, 821, 683 P.2d 854, 857 (1984); *Aldape v. Lubcke,* 107 Idaho 316, 317–18, 688 P.2d 1221, 1222–23 (Ct.App. 1984). A material breach affects the substantive rights of the parties and a rescission of the contract may be ordered. *Crowley, supra; Aldape, supra.* Rescission is not warranted where the breach is incidental and subordinate to the main purpose of the contract. *Huggins, supra.* There is no material breach of contract where substantial performance has been rendered. *See* J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 11–22 (2d ed. 1977). "Substantial performance is performance which despite deviation or omission provides the important and essential benefits of the contract to the promisee." *Gilbert v. City of Caldwell,* 112 Idaho 386, 394, 732 P.2d 355, 363 (Ct.App. 1987).

Whether a breach of contract is material is a question of fact. See *Pugmire v. Sandy,* 102 Idaho 346, 347, 630 P.2d 138 (1981); *Enterprise, supra; Commerce Mortgage Co. v. Industrial Park,* 101 Or.App. 345, 791 P.2d 132, 136 (1990) (opinion adhered to as modified, reconsideration allowed (on other grounds)), *In re*

*Industrial Park Col.,* 102 Or.App. 284, 793 P.2d 894 (1990). Our role in reviewing a factual finding of material breach is limited. We do not weigh the evidence, nor do we substitute our view of the facts for the view of the trial judge. *E.g., Angleton v. Angleton,* 84 Idaho 184, 370 P.2d 788 (1962). We merely determine whether the finding is supported by substantial, albeit conflicting, evidence in the record. If so, the finding cannot be deemed clearly erroneous. *Rasmussen v. Martin,* 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). We regard evidence as "substantial" if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. IDAHO APPELLATE HANDBOOK §§ 3.3.1 and 3.3.2.2 (Idaho Law Foundation, Inc. 1985).

In its memorandum decision, the district court found a breach of contract by ParkCenter, which is not challenged by ParkCenter on cross-appeal. The district court concluded that ParkCenter expressly agreed to provide a minimum of 500 parking spaces either on the shopping center property itself, or "immediately contiguous or adjacent thereto." The district court found that only 387 parking spaces were actually on the shopping center property but that ParkCenter had arranged for enough additional parking spaces across Mallard Drive to provide for more than the required 500 spaces. In the district court's opinion, these additional spaces were in sufficiently close proximity to meet the definition of "contiguous" or "adjacent." The district court found a breach of contract, however, in the fact that the additional parking spaces across Mallard Drive were provided only after 5:00 p.m. on weekdays and on weekends. The limitation on parking availability, which would limit the number of spaces to 387 during normal business hours on weekdays, did not comply, the court found, with the unequivocal language of the lease by which ParkCenter agreed "[t]hat there shall be maintained at all times a minimum of 500 parking spaces...."

As to the materiality of the breach, which resulted in only 387 spaces being available during normal weekday business hours, including the lunch hour, the district court held that the deviation from the terms of the contract was immaterial, based on a review of the evidence. The district court found that there was always parking available on the shopping center property. As the court stated:

There were always spaces vacant on the south side of the mall building and usually also on the east side. The only parking area usually filled during the lunch hour, which was plaintiff's busiest time, was on the north side of the mall building adjoining plaintiff's restaurant. Apparently there were not sufficient parking spaces in that area in immediate contact with the restaurant to meet the needs of plaintiff's quick lunch business. However, there is no claim or proof but that all of the parking as promised there was provided by defendant.

. . . .

Since parking spaces were at all times available on the shopping center property, I conclude that the defendant's failure to provide a minimum of 500 parking spaces at all times was not such a substantial and material breach of the lease as to support plaintiff's action for rescission.

The district court rejected Mountain Restaurant's contention that it was misled by a landscape site plan as to available parking on the west side of the shopping center, concluding that a berm shown on the plan would separate the parking from the building and that such parking would not have been reasonably convenient to plaintiff's business.

■ We must determine whether there is substantial evidence to support the district court's factual finding that ParkCenter's breach of the parking provision of the lease was not such a material breach as to warrant rescission of the contract. Mountain Restaurant urges us to rule as a matter of law that a lessor's failure to provide parking in accordance with the terms of a written lease constitutes a material breach of the agreement, citing *Berlands, Inc. of Tulsa v. Northside Village Shopping Center, Inc.*, 378 P.2d 860 (Okla.1963). This we decline to do, on the basis that the substantial evidence standard of review has been applied to questions of materiality of contract breaches under Idaho case law, e.g., *Pugmire*, 102 Idaho at 347, 630 P.2d at 139; *Brainard v. Equity Metals, Inc.*, 93 Idaho 879, 477 P.2d 502 (1970); *Mecham v. Nelson*, 92 Idaho 783, 786, 451 P.2d 529, 532 (1969); *Child v. Blaser*, 111 Idaho 702, 704, 727 P.2d 893, 895 (Ct.App.1986). In addition, such an inflexible rule would permit the harsh remedy of rescission in circumstances involving even immaterial deviations from parking requirements.

■ Mountain Restaurant also asserts that it was error for the district court to find that the parking across Mallard Drive was immediately contiguous or adjacent to the shopping center, arguing that the district court failed to place sufficient emphasis on the word "immediately" as a modifier of "contiguous" and "adjacent." We conclude that the district court's interpretation of this contractual term falls within the usual and ordinary meaning of such a term, see, e.g., *International Engineering Co., Inc. v. Daum Industries, Inc.*, 102 Idaho 363, 365, 630 P.2d 155, 157 (1981). Thus, the district court's finding that Park-Center did not breach this term of the lease by providing parking across Mallard Drive from the shopping center will not be disturbed on appeal.

■ As an additional ground for reversal, Mountain Restaurant argues that the district court should have applied a test which would focus upon whether Mountain Restaurant would have entered into the lease if it had known that parking was to be provided across Mallard Drive as opposed to on the west side of the shopping center, and that the parking hours for certain parking areas would be restricted, citing *Brown v. Yacht Club of Coeur d'Alene, Ltd.*, 111 Idaho 195, 722 P.2d 1062 (Ct.App.1986), and *Berlands, Inc., supra.* Mountain Restaurant appears to suggest that if one party to a contract subjectively considers a certain term to be material,

that the court must so find. We do not believe that *Brown* or *Berlands* stand for that proposition. *Brown* is factually distinguishable, involving a suit for rescission of an agreement to purchase real property based on the seller's inability to convey marketable title. This Court held that a purchaser who bargained for marketable title could not be required to accept the property with a cloud on the title. *Brown*, 111 Idaho at 197–98, 722 P.2d at 1065–66. The Court applied the test that to be marketable, title must be free of reasonable doubt, defined as whether "a reasonably prudent person, familiar with the facts and apprised of the question of law involved, would accept the title in the ordinary course of business." *Id.* This test is inapplicable to the question whether the breach of a parking provision in a commercial lease is material. It is well established that materiality is a question of fact for the trial court, which must review and weigh often conflicting evidence concerning materiality. We thus reject the proffered subjective test of materiality. Nor do we read *Berlands* to suggest that the test of materiality is subjective, since the court there considered all evidence regarding materiality, not merely the subjective intent of the lessee.

■ The balance of Mountain Restaurant's argument consists of challenging the factual basis for the district court's conclusion of an immaterial breach. Mountain Restaurant argues that the location of parking was very important because in a lunch-oriented business customers will not walk very far from their cars to a restaurant. The specific location of parking for Mountain Restaurant's customers was not stated in by the lease. Rather, the relevant lease provision, Article V(A), provided that the lessee shall "at all times have a non exclusive and non revokable right, together with the other tenants and occupants of ... the shopping center, to use the parking area ... for itself, its customers and employees." Although Mountain Restaurant may have believed that it was extremely important to its business to have parking available right next to its location, the lease did not so provide. Thus, the fact

that spaces in close proximity to the restaurant were generally not available during the lunch hour does not provide support for the claim that there was a material breach of the lease because the lease simply did not provide that parking in that area would be reserved for Mountain Restaurant's customers.

■ As to the finding that the proposed parking on the west side, which never materialized, was not a material breach because the parking was separated by a berm, this finding is based upon substantial, though conflicting, evidence and will not be disturbed on appeal.

■ After a careful review of the record, we are unable to conclude that the district court committed clear error when it found that the failure to provide a minimum of 500 parking spaces at all times was a material breach of the lease, when the evidence showed that the available parking was never filled, even during the lunch hour. The district court's determination is supported by substantial evidence and is affirmed.

2. *Equitable estoppel.*

■ After the memorandum decision was issued finding that the breach of the parking provision of the lease was not a material breach, Mountain Restaurant filed a motion to alter or amend the judgment, arguing that ParkCenter should be estopped from denying the materiality of the provision. The district court denied the motion, ruling that to grant the motion would change the theories of law and the outcome of the case. On appeal, Mountain Restaurant asserts that this ruling of the district court was in error and that it has proved all the elements of equitable estoppel.

The record reveals that Mountain Restaurant never pled the theory of equitable estoppel, nor was it raised as an issue at trial. In *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 827–830, 761 P.2d 1169, 1179–1182 (1988), our Supreme Court held that a party may not try a case on certain issues, choosing not to try or overlooking certain

other issues, and then when the case is lost on that issue, attempt to have the court redecide the case based upon the same evidence but new legal theories, *citing Masters v. State*, 105 Idaho 197, 200, 668 P.2d 73, 76 (1983); *Eastern Idaho Loan & Trust Co. v. Blomberg*, 62 Idaho 497, 506, 113 P.2d 406, 410 (1941); *Idaho Gold D. Corp. v. Boise Payette Lbr. Co.*, 52 Idaho 766, 776, 22 P.2d 147, 150 (1933). As the Supreme Court noted in *Ross:*

> I.R.C.P. 15(b) provides that issues, even though not raised by the pleadings, may be tried by the "express or implied *consent* of the parties." (Emphasis added.) However, consent implies, and minimal due process requires, notice to a litigant of the issues being raised. When issues are not raised by the pleadings, the evidence raising the legal issue must be clear enough so that both parties know of the issue and consent to the issue being tried.

*Ross*, 114 Idaho at 827, 761 P.2d at 1179.

Although Mountain Restaurant points to evidence in the record establishing knowledge by ParkCenter that it could not provide 500 parking spaces at all times before the lease was signed, it has not demonstrated that ParkCenter expressly or impliedly consented to the trial of the unpled estoppel issue. Implied consent to the trial of an unpled issue "is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue." *MBI Motor Co., Inc. v. Lotus/East, Inc.*, 506 F.2d 709, 711 (6th Cir. 1974), *cited in Ross*, 114 Idaho at 828, 761 P.2d at 1180. Mountain Restaurant has not shown us any references to the record in which the evidence of ParkCenter's knowledge that it could not comply with the parking provision of the lease, and evidence relating to the knowledge of Michael Clune regarding parking availability, were specifically tied to the legal theory of equitable estoppel.[1] Accordingly, we do not agree that ParkCenter impliedly consented to the trial of this issue, and we affirm the district court's ruling denying this aspect of Mountain Restaurant's motion to alter or amend.

### 3. *Damages for Mountain Restaurant's breach of lease.*

On its cross-appeal, ParkCenter asserts that the district court erred when it failed to include in the judgment an award of $2,213.60 in attorney fees and costs which ParkCenter incurred in bringing a separate unlawful detainer action against Mountain Restaurant. This amount was sought in ParkCenter's counterclaim and Mountain Restaurant had agreed, at the time that the unlawful detainer action was dismissed by ParkCenter, that Mountain Restaurant would not contest ParkCenter's right to claim this amount in the instant action, should ParkCenter prevail on its counterclaim.

ParkCenter prevailed in part on its counterclaim, with the district court awarding it $12,023 in unpaid rent against Mountain Restaurant. Article XXIV of the lease provides that the prevailing party in any action or proceeding relating to the provisions of the lease has a contractual right to attorney fees, expenses and reasonable costs. Additionally, Mountain Restaurant does not argue in opposition to this aspect of ParkCenter's cross-appeal. Accordingly, we remand to the district court for the purpose of entry of judgment of $2,213.60. ParkCenter has not requested prejudgment interest on this amount.

### 4. *Attorney fees and costs under I.R.C.P. 54(d)(1).*

In its memorandum decision, the district court held that because each party

---

1. *Barnard & Son, Inc. v. Akins,* 109 Idaho 466, 469, 708 P.2d 871, 874 (1985) is distinguishable, for there the Supreme Court held that the district court erred, in a buyer's suit for specific performance of a land sale contract, by failing to grant a post-trial motion for rescission. The Supreme Court stated that the error consisted in the trial court's denial of an appropriate form of equitable relief, rescission. This holding cannot be extended to apply to unpleaded causes of action, that is, theories of liability, as opposed to equitable remedies, where the other party has not expressly or impliedly consented to the trial of such theories.

prevailed in part and did not prevail in part, it would not award attorney fees and costs. ParkCenter challenges this determination on its cross-appeal.

A determination of who is the prevailing party is committed to the sound discretion of the district court. *Gilbert v. City of Caldwell,* 112 Idaho 386, 399, 732 P.2d 355, 368 (Ct.App.1987). Here, each party prevailed in part and did not prevail in part, as the district court determined. Mountain Restaurant succeeded in establishing a breach of contract, but did not prove that the breach was material and thus was not granted rescission. ParkCenter sought damages for breach of the lease resulting from Mountain Restaurant's failure to pay rent both while it occupied the mall space and after it vacated the space, for the remainder of the term of the lease. The district court granted relief to Park-Center only as to the rent payments for the period that Mountain Restaurant occupied the space, but denied prospective relief because of ParkCenter's failure to mitigate damages. Thus, ParkCenter too prevailed only in part.

I.R.C.P. 54(d)(1)(B) gives the district court the discretion to award no fees and costs where it finds that each party has prevailed in part and not prevailed in part. *Ace Realty, Inc. v. Anderson,* 106 Idaho 742, 750, 682 P.2d 1289, 1297 (Ct.App.1984). No clear abuse of discretion has been shown in the district court's decision not to award attorney fees and costs to ParkCenter, and accordingly this decision will be affirmed. *Ace Realty, supra; Chadderdon v. King,* 104 Idaho 406, 411–412, 659 P.2d 160, 165–166 (Ct.App.1983).

## 5. *Rule 68 Costs.*

ParkCenter asserts that the district court erred when it refused to award ParkCenter costs under I.R.C.P. 68 pertaining to offers of judgment. For the following reasons we affirm the order of the district court.

Prior to trial, ParkCenter offered to allow judgment to be taken against it in the amount of $10,000, including attorney fees and costs to the date of the making of the offer, to grant rescission of the lease and release from the personal guaranty on the lease, on the conditions that Mountain Restaurant vacate the premises and that fourteen items of fixtures remain on the premises, including such items as a walk-in cooler, a floor safe, cabinets, counter-tops, wall-tile and storage shelves. The monetary value of these items was not stated in the offer. The district court ruled that because of the difficulty in comparing the offer of judgment with the judgment finally rendered in the case that Rule 68 did not mandate an award of costs.

A party who has made an offer of judgment under Rule 68 is entitled to recover its costs, as allowable under Rule 54(d)(1), incurred after the making of the offer, if the judgment finally obtained by the offeree is not more favorable than the offer. *Masters v. Dewey,* 109 Idaho 576, 580, 709 P.2d 149, 153 (Ct.App.1985). The issue presented is whether the district court correctly concluded that because of the structure of the offer it was not possible to ascertain whether the offer is more favorable than the judgment. We believe that the district court's order denying costs was correct. There was extensive testimony and exhibits at trial concerning the value of various trade fixtures owned by Mountain Restaurant, and their value was at least $20,000, with evidence in the record of values in excess of that amount. The offer of judgment might have actually resulted in a net loss to Mountain of over $10,000. The judgment required Mountain Restaurant to pay $12,023.00 in back rent, but given the difficulty of evaluating the trade fixtures, we cannot determine whether the award of back rent actually exceeds the net monetary loss from the offer of judgment. Accordingly, the district court's order denying ParkCenter its claimed Rule 68 costs is affirmed.

Mountain Restaurant has not prevailed on this appeal, and ParkCenter has prevailed in part on its cross-appeal. Under the terms of the lease, we award attorney fees and costs to Mountain Restaurant as to the portion of the cross-appeal relating to attorney fees and costs, including Rule

68 costs. We award attorney fees and costs to ParkCenter as to the part of the appeal relating to material breach, equitable estoppel, and damages from its unlawful detainer action.

## CONCLUSION

The judgment of the district court is affirmed in all respects, except that we remand the case for the inclusion in the judgment of an award of $2,213.60 as damages from the unlawful detainer action. The orders of the district court denying attorney fees and costs, including Rule 68 costs, are affirmed. Costs and attorney fees to Mountain Restaurant and to Park-Center consistent with this opinion.

WALTERS, C.J., and SWANSTROM, J., concur.